```
         IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
                   EASTERN DIVISION
```

SHELLEY Y. KAPLAN,

        Plaintiff,     Case No. 05 C 2001

    v.     Hon. Harry D. Leinenweber

THE CITY OF CHICAGO,

        Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant City of Chicago's Motion for Summary Judgment. For the following reasons, the Defendant's Motion is granted.

### I. BACKGROUND

At the outset, the Court notes that Plaintiff's Memorandum in opposition to the pending Motion for Summary Judgment is rife with allegations and conclusions that lack any evidentiary support. Such a response is insufficient and, to the extent Plaintiff's allegations are unsupported by the record, the Court ignores them for purposes of the pending motion. Local Rule 56.1(b); *see Edward E. Gillen Co. v. City of Lake Forest*, 3 F.3d 192, 196 (7th Cir., 1993)(mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material). This is because summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has

that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir., 2007). The Court now turns to the undisputed facts.

Plaintiff, Shelley Y. Kaplan, was employed as an officer of the Chicago Police Department (the "CPD") from January 1991 until March 2006. On March 24, 2006, the CPD terminated Plaintiff because, according to the CPD, she refused to comply with a direct order. Both before and after her termination, Plaintiff initiated numerous grievances and lawsuits against the CPD and the City of Chicago (the "City") on various grounds, including discrimination based on her Jewish faith. On April 22, 2008, this Court dismissed certain portions of Plaintiff's Second Amended Complaint on *res judicata* and statute of limitations grounds. The only claims remaining before the Court are Plaintiff's claim that prayer which occurred during certain meetings organized pursuant to the CPD's Community Alternative Policing Strategy ("CAPS") program violated the First Amendment and her related claim that the CPD discriminated against her when she complained about prayer at CAPS meetings.

The CAPS program, which the CPD implemented in 1993, brings the community, police, and other City agencies together to identify and solve problems of crime and neighborhood disorder and to improve the quality of life in Chicago's neighborhoods. As part of the CAPS program, beat community meetings ("beat meetings" or "CAPS

meetings") are held on a monthly or quarterly basis in each of the 281 police beats in the City. Beat meetings offer an opportunity for police and community members to meet, exchange information, and identify and discuss crime and disorder problems on the beat.

Beat meetings are held in public locations on the beat, but may not be held in private homes or locations that derive their primary source of income from the sale or consumption of alcohol. Beat meetings typically are held at police stations, schools, parks, banks, libraries and churches. Beat meetings are conducted jointly by members of the CPD and the local community ("community co-chairs") and attendance is open to the public. The CPD encourages the participation of community members in beat meetings and community co-chairs may assist in leading each beat meeting and establishing the meeting's agenda. However, the ultimate responsibility for beat meetings rests with the CPD as CPD General Order 96-03-05 states that "responsibility for establishing the agenda and ensuring that the meeting runs smoothly rests with the beat team officers and cannot be delegated." G.O. 96-03-05 also lists various items that normally appear on a beat meeting agenda such as "welcome and introduction of participants," "identification/analysis of new problems," and "discussion of strategies and coordination of responsibilities." G.O. 96-03-05 says nothing about prayer at beat meetings.

The CPD assigns one "primary officer" from each of the three watches, or shifts, to attend beat meetings. If that officer is unable to attend, the district's CAPS lieutenant assigns a relief officer from the same watch to attend in the primary officer's place. Because CAPS meetings occur in the evening, officers from the first and second watches are entitled to receive overtime pay for their time spent attending beat meetings.

Plaintiff was assigned to the CPD's Sixth District, and the various beats located within it, from 1992 to 1993 and then again from February 1999 until February 2005. As part of her duties in the Sixth District, Plaintiff attended approximately five CAPS meetings from January to April 2004, a couple of which she volunteered to attend "to review community concerns regarding crime problems and crime patterns in the neighborhood."

Plaintiff claims that each of the beat meetings she attended opened and closed with Christian prayer. While Plaintiff did not participate in these prayers she remained present during them because, she claims, "the intimacy of the meetings did not permit unobtrusive escape." Plaintiff claims that at one meeting on an unknown date, an unidentified male asked her to lead the meeting and start with a prayer. Thinking the request was a joke, Plaintiff refused. Someone else led the prayer at that meeting and the CPD District Commander, who was present, participated in the prayer.

Plaintiff submitted a document that she claims is the agenda for the April 22, 2004 beat meeting and it includes items entitled "Prayer" and "Closing" but Plaintiff does not know who prepared the document. Plaintiff led the April 22, 2004 beat meeting at which there was prayer but Plaintiff does not recall who initiated the prayer or whether it was a CPD member or a civilian.

Plaintiff complained to several other CPD members about prayer at the beat meetings she attended, including her direct superior, Lieutenant Bruce D. Lipman. Lt. Lipman told Plaintiff that she was free to excuse herself from beat meetings during prayer, that it would not be held against her, and that if anyone challenged Plaintiff for excusing herself during prayer he would tell that person that prayer is not required. Lt. Lipman also offered to change Plaintiff's assignment so that she would no longer be in the pool of officers possibly assigned to attend beat meetings.

## II. **STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Intern.-Indiana, Inc.*, 211 F.3d 392, 396 (7th Cir., 2000). In ruling on a summary judgment motion, "facts must be viewed in the light most favorable to the nonmoving

party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372 (2007). A genuine issue of material fact exists only if a reasonable finder of fact could return a decision for the nonmoving party based upon the record. *See Insolia v. Phillip Morris Inc.*, 216 F.3d 596, 599 (7th Cir., 2000).

### III. DISCUSSION

**A. Plaintiff Cannot Establish a First Amendment Violation**

Plaintiff claims that the CPD violated the Establishment Clause by allowing Christian prayer at CAPS meetings and thereby coercing Plaintiff to support or participate in a Christian religious exercise. The Establishment Clause of the First Amendment guarantees that the "government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which 'establishes a [state] religion or religious faith, or tends to do so.'" *Lee v. Weisman*, 505 U.S. 577, 587 (1992) (quoting *Lynch v. Donnelly*, 465 U.S. 668, 678 (1984)). In analyzing Plaintiff's Establishment Clause claim the Court must ask three questions: first, has the state acted; second, does the action amount to coercion; and third, is the object of the coercion religious or secular? *Kerr v. Farrey*, 95 F.3d 472, 479 (7th Cir., 1996). There is no question CAPS beat meetings pass this test.

First, Plaintiff has not shown that prayer at the beat meetings is due to any "state action." State action exists when the government enacted the challenged law, rule or regulation, *see,*

*e.g.*, *School Dist. of Abington Tp., Pa. v. Schempp*, 374 U.S. 203 (1963), or where the person(s) responsible for the challenged action are acting on behalf of the government, *see, e.g., Kerr*, 95 F.3d 472. Plaintiff's position is that, pursuant to G.O. 96-03-05, the CPD ultimately is responsible for running beat meetings and since prayer occurred at the meetings she attended, the CPD must have been responsible for the prayer, making the prayer the result of "state action." Plaintiff ignores the fact that G.O. 96-03-05 says nothing about prayer and Plaintiff presents no evidence indicating that prayer at the beat meetings she attended occurred at the direction of the CPD rather than community members. Nor does the April 22, 2004, beat meeting agenda containing the items "Prayer" and "Closing" establish that the CPD ordered that prayer occur at the meeting because community co-chairs assist in setting the agenda for beat meetings. Thus, "Prayer" may have been included on the agenda at the request of a community member. Plaintiff also does not contend that CPD officers actually led any prayers. In short, no reasonable factfinder could conclude that prayer at the approximately five CAPS meetings Plaintiff attended was due to any state action.

Second, Plaintiff cannot show that she was coerced to observe the Christian prayer that occurred at the beat meetings she attended, or even that she was coerced to attend the meetings. State action is "coercive" when the government combines the force

of law with the threat of penalty in order to induce some action. *See Kerr*, 95 F.3d 472 (state mandate that parolee complete faith-based substance abuse program or return to jail was coercive); *Bausch v. Sumiec*, 139 F.Supp.2d 1029 (E.D.Wis., 2001)(same). Here, the undisputed facts establish that Plaintiff was free to excuse herself from the beat meetings during prayer. She does not contend that any CPD member ever told her she could not leave, or even told her she should stay, during prayer. Rather, Plaintiff maintains that "the intimacy of the meetings did not permit unobtrusive escape." However, the fact that Plaintiff's absence during prayer may have been conspicuous or that she may have found it embarrassing to excuse herself during a beat meeting does not give rise to a constitutional violation. In fact, when Plaintiff complained to her direct supervisor, Lt. Lipman, he confirmed that she was free to leave the meetings during prayer and, if she so desired, he would remove her from the pool of officers assigned to CAPS meetings. Thus, Plaintiff cannot establish that there was any formal or informal CPD rule requiring her presence during prayer at CAPS meetings, or that there would be any penalty if she refused to remain present.

In certain circumstances a plaintiff can establish coercion by showing that the prayer or religious exercise was endorsed by the state. *See Venters v. City of Delphi*, 123 F.3d 956, 970 (7th Cir., 1997); *Milwaukee Deputy Sheriffs Ass'n v. Clarke*, 513 F.Supp.2d

1014, 1019-20 (E.D.Wis., 2007). Coercive government endorsement of prayer is a common theme in the line of Supreme Court cases banning prayer in public schools. *See, e.g., Santa Fe Independent School Dist. v. Doe*, 530 U.S. 290 (2000); *Lee*, 505 U.S. 577; *Engel v. Vitale*, 370 U.S. 421 (1962). Government endorsement of religion was also found to be coercive in *Milwaukee Deputy Sheriffs* where the county sheriff invited members of a Christian church to mandatory deputy roll call meetings so they could present their religious message and proselytize. *Milwaukee Deputy Sheriffs,* 513 F.Supp.2d 1014. The district court found that the religious nature of the church members' presentation combined with the fact that the sheriff had invited them to speak at mandatory deputy meetings signaled to the deputies that the sheriff endorsed the religious message being conveyed. *Id.* Thus, the deputies were coerced to participate or at least remain present at the presentations for fear of losing their jobs. *Id.*

Here, by contrast, Plaintiff has shown no evidence that the CPD endorsed, rather than merely tolerated, prayer at the CAPS meeting she attended. The closest Plaintiff comes to showing the CPD endorsed prayer is her testimony that she observed the CPD district commander participating in prayer at one of the beat meetings she attended. But Plaintiff presents no evidence that the CPD introduced prayer into the beat meetings or required, or even encouraged, CPD officers to remain present during prayer. There is

no evidence that the CPD, rather than a community member, put "Prayer" on the April 22, 2004, CAPS meeting agenda, or that CPD members led or chose the prayers that were said at the meetings Plaintiff attended. In fact, Lt. Lipman stated in his witness statement, which Plaintiff submitted to the Court, that prayer at CAPS meetings was not included at the CPD's insistence but rather was "something the community wanted to have at the meetings." Given the complete absence of any supporting evidence, Plaintiff cannot show that the CPD endorsed prayer at CAPS meetings and, as a result, she cannot show coercion and her Establishment Clause claim fails.

Finally, the Court notes that Plaintiff has sued only the City of Chicago. Thus, even if Plaintiff could show a First Amendment violation, which she cannot for the reasons stated above, Plaintiff still cannot prevail without showing that the asserted constitutional violation was attributable to a municipal policy or custom. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978); *Treece v. Hochestetler*, 213 F.3d 360, 364 (7th Cir., 2000); *Venters v. City of Delphi*, 123 F.3d 956, 966 (7th Cir., 1997). Here, Plaintiff presents no evidence whatsoever that CPD has a policy requiring prayer at CAPS meetings. Instead, Plaintiff asks the Court to extrapolate her observations at the approximately five CAPS meetings she attended during her entire 15-year career with the CPD and infer the existence of an unwritten

CPD policy. The Court will not make this inference. Thus, even if Plaintiff could show an underlying First Amendment violation, which she cannot, her claim against the City still fails.

**B. Plaintiff Cannot Establish a Title VII Violation**

Plaintiff asserts that the CPD removed her from the pool of officers assigned to CAPS meetings because she voiced religious objections to the Christian prayers said at the meetings she attended. According to Plaintiff, because participation in CAPS is highly compensated and necessary for advancement within the CPD, such removal constituted an adverse employment action due to religious discrimination in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e *et seq.* To prove her Title VII claim, Plaintiff must establish that (1) her bona fide religious practice, belief or observance conflicts with an employment requirement, (2) she brought the practice to the CPD's attention, and (3) the religious practice was the basis for the adverse employment decision. *E.E.O.C. v. United Parcel Service*, 94 F.3d 314, 317 (7th Cir., 1996).

Plaintiff's Title VII claim fails for several reasons. First, she presents no evidence that she was actually "removed" from the CAPS program. She attended only five CAPS meetings in her entire 15-year career with the CPD, and a couple of those she attended voluntarily, not because she was assigned to attend. Moreover, even if Plaintiff was removed from the CAPS program, she presents

absolutely no evidence that the CPD removed her because she complained about prayer.  Furthermore, for the reasons stated above in Section III.A., Plaintiff cannot show that prayer at CAPS meetings was an employment requirement.  Accordingly, the City is entitled to summary judgment on Plaintiff's Title VII claim.

## IV. CONCLUSION

For the reasons stated herein, Defendant City of Chicago's Motion for Summary Judgment is GRANTED.

**IT IS SO ORDERED.**

                                                                  Harry D. Leinenweber, Judge
                                                                  United States District Court

**DATE:** 3/27/2009